IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL S. RIEGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 08-433-SLR |
| | ) |
| THOMAS CARROLL, et al., | ) |
| | ) |
| Defendants. | ) |

Michael S. Riego, Dover, Delaware. Pro se Plaintiff.

Philip Henry Bangle and Kenisha LaShelle Ringgold, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: September 28, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Michael S. Riego ("plaintiff"), a former inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. (D.I. 2) He proceeds pro se and has been granted leave to proceed in forma pauperis. Presently before the court is defendants' motion for summary judgment and plaintiff's request for counsel. (D.I. 84) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the court will grant defendants' motion.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed his complaint on July 14, 2008 and amended it on December 15, 2008. (D.I. 2, 11) Since that time, the claims against defendants Stan Taylor and Elizabeth Burris have been dismissed.[1] (See D.I. 12) Plaintiff alleges that while incarcerated at the VCC, the housing conditions at Units T1 and T2 violated his constitutional rights. Plaintiff was housed in T1 from April 15, 2006 until July 15, 2008. (D.I. 11) He was released from prison in April 2010. (D.I. 44)

Plaintiff alleges that: (1) the buildings were condemned as unfit for housing but reopened for housing on or about April 15, 2006, without correcting the problems; (2) there are no sprinklers in the buildings; (3) constant lighting[2] causes sleep deprivation; (4) every Tuesday there is a lack of heat and hot water, and for a seven-day period inmates were moved from the building due to heat and hot water problems;

---

[1] Plaintiff named a John Doe defendant, but he was never identified.

[2] Plaintiff alleges that "dorm style" lighting is controlled by corrections officers and remains on twenty-four hours per day and that large double hung windows throughout the buildings allow natural light and outdoor security lights to "spillover" into the building. (D.I. 11, ¶ 11)

(5) asbestos insulation is not sealed in many places and there is insufficient ventilation in the buildings; and (6) the design of the bathrooms does not afford privacy. Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages. (D.I. 11, ¶¶ 10-14, 21; D.I. 85, ex. 1 at 5 )

Defendant Thomas Carroll ("Carroll") was the warden at the VCC at the time plaintiff was transferred to T1. He was replaced by defendant Perry Phelps ("Phelps"), in early January 2008. Defendant Carl Danberg ("Danberg") has been the Delaware Department of Correction ("DOC") Commissioner since early January 2007. (D.I. 11, ¶¶ 4, 7-8, 10-14; D.I. 85, ex. 1 at 21)

**Fire Suppression System.** Plaintiff claims that there is no fire suppression system in T1 and T2. He testified that no fires occurred during the relevant time-frame. Inspections of T1 and T2 occurred in April, August, September, November, and December 2006, in August and November 2007, and in March and September 2008. The fire extinguishers, self-contained breathing apparatuses, and radios were inspected, charged when necessary, and were operational. In addition, the fire suppression system was operating in the normal mode. Plaintiff filed a grievance on May 22, 2008, complaining there was no sprinkler system in T1. It was returned as non-grievable.[3] (D.I. 85, ex. 1 at 22-23, 32, exs. 2, 4)

---

[3]DOC policy requires that inmates submit grievance within seven calendar days following an incident. The May 22, 2008 grievance raised issues of lighting, sprinklers, asbestos, and mold, but was deemed "nongrievable," noting that plaintiff had been housed in the building since 2006, yet the grievance was submitted "over the 7 day time limit." Plaintiff testified that the grievance process was meaningless until the change in wardens. He waited to submit his grievances because he thought things had changed for the better once Phelps became the VCC warden and Danberg became the commissioner because they might "actually do something." (D.I. 85, ex. 1 at 20, ex. 3 at

2

**Lighting.** Plaintiff testified that the lights coming from outside security, combined with interior lighting, caused twenty-four hour lighting, making it difficult to sleep. The spillover light occurred because there were no window shades and there was no way to block the light. Some guards would turn off many of the lights, but others would not. Plaintiff testified that Carroll was aware of the constant lighting issue because inmates sent him a memo and petition on November 22, 2006. On December 5, 2006, Carroll forwarded the memo to Karen Hawkins ("Hawkins") and asked her to review the complaint and to advise him of her findings. Hawkins reported to Carroll on December 11, 2006, and indicated that she would follow up with maintenance to address the issue. Carroll does not have an independent recollection of the memo. Plaintiff filed a grievance on May 22, 2008, complaining about the constant lighting in T1. It was returned as non-grievable.[4] (D.I. 78; D.I. 85, ex. 1 at 10-12, 31, exs. 4-6)

**Heat and Hot Water.** Plaintiff complains of lack of heat or hot water every Tuesday. Plaintiff indicated that it was common practice to issue four or five blankets instead of the normal two, because the heat was so poor. On one occasion, the inmates were moved because there was no heat. On another occasion, electric space heaters were used. Plaintiff testified that, when there was no heat or hot water, a correctional officer would file a work order and they would come the next day or two or three days later depending on how cold it was.

---

Level I, ex. 4)

[4]See n.3, *supra.*

Danberg explained that the T buildings operated under a boiler system and it required taking the heating system off-line to regularly replace valves. The maintenance affected not only the T buildings, but also the VCC site-wide. At one time, the T buildings were taken off-line to upgrade housing for inmates with special needs and for building maintenance. Danberg also explained that the heat is turned off, usually in the middle of the night, to allow replacement of steam valves because, if the steam valves are not systemically replaced, the valves will fail and this results in dangerous conditions and the failure of the steam heat system. Plaintiff did not grieve the issue, but he did sign a petition submitted by inmates. (D.I. 63; D.I. 85, ex. 1 at 14, 21-22, 34, 54)

**Bathroom Privacy.** Plaintiff testified that the correctional officers' office window has three sides and is next to the bathroom and shower so that a person could see from the bed and bunk area, through the office into the bathroom. Female correctional officers worked in the building and they had a full unimpeded view of the bathroom. When asked if anyone leered at him or made comments, plaintiff responded that he "personally never felt that [he] was being objectified." Plaintiff did not submit a grievance regarding the issue. (D.I. 85, ex. 1 at 11, 14-15)

**Dirt and Mold.** Plaintiff testified that T1 was a dirty facility and there was mold and buildup in certain areas due to leaking pipes. Plaintiff submitted a grievance on May 22, 2008, complaining of the mold, but did not submit a grievance regarding the dirty building.[5] (D.I. 85, ex. 1 at 10, 14-15)

---

[5] See n.3, supra.

4

**Asbestos**. The complaint alleges exposure to asbestos in the insulation. During his deposition, plaintiff testified that he received a report through discovery that indicated the insulation did not contain asbestos.[6] Therefore, he is not pursuing the claim.[7] (D.I. 85, ex. 1 at 14, 23)

Plaintiff testified that Phelps visited T1 and T2, but provided no dates or instances when he spoke to, or contacted, Phelps regarding his concerns. Phelps did not become the VCC warden until 2008, the year plaintiff transferred from the T-building. (D.I. 85, ex. 1 at 31; D.I. 64)

Plaintiff named Danberg as a defendant because he is in "charge of the place." Plaintiff testified that Danberg "came in towards the end of [his] time there. And he saw the conditions." Plaintiff further testified, "I think most people would say that since he is the person in charge he's responsible for his employee's actions." (D.I. 85, ex. 1 at 31)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed

---

[6]Plaintiff testified that he was not claiming that the air quality, by itself, was an unconstitutional condition of confinement. (D.I. 85, ex. 1 at 14)

[7]See n.3, *supra*.

5

issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff did not file an opposition to defendants' motion for summary judgment. The court will not grant the entry of summary judgment without considering the merits of defendants' unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed).

Defendants move for summary judgment on the grounds that: (1) there is an insufficient showing of personal involvement and supervisory liability cannot be imposed under § 1983; (2) plaintiff failed to exhaust his administrative remedies as is required by

the Prison Litigation Reform Act ("PLRA"); and (3) the evidence does not support plaintiff's constitutional claims or his allegations of physical injury.

## IV. DISCUSSION

Defendants move for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Defendants have the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a § 1983 action. *Ray v. Kertes,* 285 F.3d 287, 295-96 (3d Cir. 2002).

Under 42 U.S.C. § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner,* 532 U.S. 731, 741 n.6 (2001). Exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo,* 548 U.S. 81, 88 (2006); *Nickens v. Department of Corr.,* 277 F. App'x 148, 152 (3d Cir. 2008) (not published).

"'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard,* 482 F.3d 637, 639 (3d Cir. 2007) (not

7

published) (quoting *Spruill v. Gillis,* 372 F.3d 218, 231 (3d Cir. 2004)). Perfect overlap between the grievance and complaint is not required by the PLRA as long as there is a shared factual basis between the two. *Jackson v. Ivens,* 244 F. App'x 508, 513 (3d Cir. 2007) (not published) (citing *Woodford,* 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.").

A futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Banks v. Roberts,* 251 F. App'x 774, 776 (3d Cir. 2007) (not published) (citing *Nyhuis v. Reno,* 204 F.3d 65, 71 (3d Cir. 2000). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. *See Spruill,* 372 F.3d at 227-28; *Nyhuis,* 204 F.3d at 67. A grievance procedure is not available, even if one exists on paper, if the defendant prison officials somehow prevent a prisoner from using it. *Mitchell v. Horn,* 318 F.3d 523 (3d Cir. 2003). If prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. *Brown v. Croak,* 312 F.3d 109, 112-13 (3d Cir. 2002).

DOC administrative procedures provide for a multi-tiered grievance and appeal process. (D.I. 85, ex. 3) First, the prisoner must file a grievance within seven days with the Inmate Grievance Chair for an attempt at informal resolution; second, if unresolved, the grievance is forwarded to the Grievance Resolution Committee for a determination, which is forwarded in turn to the Warden; and third, the Bureau Grievance Officer conducts the final level of review. (*Id.*)

The record reflects that plaintiff was housed in T1 from April 15, 2006 until July 15, 2008. He submitted a grievance on May 22, 2008, complaining that the lights were kept on for twenty-four hours, there was no sprinkler system, and there was asbestos insulation and mold. The grievance was deemed nongrievable, noting that plaintiff had been housed in the building since 2006 and the grievance was submitted "over the 7 day time limit." (D.I. 85, ex. D.I. 4) Plaintiff testified that he did not submit grievances on the other issues.

Plaintiff did not submit grievances on the issues of heat, hot water, bathroom privacy, and dirt in T1. Hence, he failed to exhaust his administrative remedies for these issues as is required by the PLRA. In addition, the one grievance plaintiff submitted that raised the lighting, sprinkler system, asbestos, and mold issues was not timely, having been submitted after plaintiff had lived in T1 for over two years. An untimely administrative grievance does not satisfy the mandatory exhaustion requirements of the PLRA. *Woodford*, 548 U.S. at 83-84. Nor does plaintiff's position that it was futile to submit grievances during Carroll's tenure as warden save his claim. A futility exception to the PLRA's mandatory exhaustion requirement is completely precluded.

Plaintiff failed to properly exhaust administrative remedies. Therefore, the court will grant defendants' motion for summary judgment.[8]

---

[8] The court will not address the other two grounds for summary judgment raised by defendants inasmuch as plaintiff failed to exhaust his administrative remedies.

## V. CONCLUSION

For the above reasons, the court will grant defendants' motion for summary judgment.

An appropriate order will issue.